# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DENNIS DICKENSON**, | § | CIVIL ACTION NO. |
| *Plaintiff,* | § § § | |
| vs. | § § | _____ |
| **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **Serve: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801;** | § § § § § § § § § § § | **JURY TRIAL DEMANDED** |
| **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **Serve: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801;** | § § § § § § § § § § § | |
| **THE GILLETTE COMPANY LLC**, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, **Serve: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801;** | § § § § § § § | |
| **HENKEL CONSUMER GOODS INC.** and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, **Serve: Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808;** | § § § § § § § § § | |

| | |
|---|---|
| **HENKEL CORPORATION** and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, **Serve: Corporation Service Company, 2900 S.W. Wanamaker Drive, Suite 204, Topeka, KS 66614;** **PFIZER INC.**, **Serve: The Corporation Company, Inc., 112 S. W. 7th Street, Suite 3C, Topeka, KS 66603;** **THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to THE GILLETTE COMPANY) for its Right Guard line of products, **Serve: CT Corporation System, 4400 Easton Commons Fleet 125, Columbus Ohio 43219;** **UNION CARBIDE CORPORATION,** **Serve: The Corporation Company, Inc., 112 S. W. 7th Street, Suite 3C, Topeka, KS 66603;** and **WHITTAKER CLARK & DANIELS, INC.,** **Serve**: **Joe Cobuzio, Tompkins, McGuire, Wacenfeld & Barry, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068** *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § |

**Proceeding Pursuant to K.S.A. Chapter 60**

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**THE PARTIES**

1. Plaintiff DENNIS DICKENSON is a citizen and resident of the County of Bourbon, State of Kansas. He resides with his wife, ROWENA DICKENSON.

2. Plaintiff DENNIS DICKENSON was diagnosed with mesothelioma, an asbestos-related cancer, on or about July 1, 2021, satisfying the criteria of the Kansas Silica and Asbestos Claims Act K.S.A. 60-4911.

3.      At all times relevant to this Complaint, and particularly prior to his diagnosis with mesothelioma, ROWENA DICKENSON has been and remains Plaintiff's wife.

4.      Upon information and belief, and at all times hereinafter, each of the Defendants was the agent, servant, employee and/or joint venture of its Co-Defendants and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employee and/or joint venture.  For purposes of this Complaint, each Defendant hereinafter mentioned shall include the present business entity, as well as all of its predecessor corporations and entities as applicable.  Upon information and belief, each Defendant inclusively: (a) was and is an individual, corporation, partnership and/or unincorporated association organized and existing under and by virtue of the laws of some other state or foreign jurisdiction to do business in the State of Kansas; (b) in person or through an agent, transacts business in the State of Kansas; (c) regularly does and/or solicits business within the State of Kansas; (d) derives substantial revenue from goods used or consumed in the State of Kansas; and (e) expected or should have expected its acts to have consequences within the State of Kansas and derives substantial revenue from interstate and/or international commerce.  At all relevant times, Defendants designed, marketed, manufactured, distributed, supplied and/or sold raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or asbestos-containing talc and/or chalk, and/or other finished and unfinished asbestos-containing talcum powder products, and/or any other powder-like product, and/or asbestos-containing talc (hereinafter collectively referred to as "Defendants' Products").

5.      Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a Delaware corporation doing business in the State

of Kansas whose registered agent for service of process is:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is being sued as a supplier of asbestos-containing talc.

6.      Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a Delaware limited liability company doing business in the State of Kansas whose registered agent for service of process is:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.  Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.)'s sole member is Brenntag North America, Inc., a Delaware corporation with its principal place of business in the State of Pennsylvania.  Therefore, Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is a citizen of the States of Delaware and Pennsylvania.  Defendant **BRENNTAG SPECIALTIES LLC** f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) is being sued as a supplier of asbestos-containing talc.

7.      Defendant **THE GILLETTE COMPANY LLC**, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, is a Delaware limited liability company doing business in the State of Kansas whose registered agent for service of process is:   The

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. The managing member of **THE GILLETTE COMPANY LLC**, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, is The Procter & Gamble Company, an Ohio corporation with its principal place of business in Ohio.   Therefore, Defendant **THE GILLETTE COMPANY LLC**, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, is a citizen of the State of Ohio. Defendant **THE GILLETTE COMPANY LLC**, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, is being sued as a manufacturer of asbestos-containing Right Guard Deodorant.

8.      Defendant **HENKEL CONSUMER GOODS INC.** and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, is a Delaware corporation doing business in the State of Kansas whose registered agent for service of process is:  Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.  Defendant **HENKEL CONSUMER GOODS INC**. and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, is being sued as a manufacturer of asbestos-containing Right Guard Deodorant.

9.      Defendant **HENKEL CORPORATION** and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, is a Delaware corporation doing business in the State of Kansas whose registered agent for service of process is:  Corporation Service Company, 2900 S.W. Wanamaker Drive, Suite 204, Topeka, KS 66614.   Defendant **HENKEL CORPORATION** and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, is being sued as a manufacturer of asbestos-containing Right Guard Deodorant.

10.     Defendant **PFIZER INC.** is a Delaware corporation doing business in the State of Kansas whose registered agent for service of process is:  The Corporation Company, Inc., 112 S. W.

7th Street, Suite 3C, Topeka, KS 66603.  Defendant **PFIZER INC.** is being sued as a supplier of asbestos-containing talc.

11.     Defendant **THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to THE GILLETTE COMPANY) for its Right Guard line of products, is an Ohio corporation doing business in the State of Kansas whose registered agent for service of process is:  CT Corporation System, 4400 Easton Commons Fleet 125, Columbus Ohio 43219.  Defendant **THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to THE GILLETTE COMPANY) for its Right Guard line of products, is being sued as a manufacturer of asbestos-containing Right Guard Deodorant.

12.     Defendant **UNION CARBIDE CORPORATION** is a New York corporation doing business in the State of Kansas whose registered agent for service of process is:  The Corporation Company, Inc., 112 S. W. 7th Street, Suite 3C, Topeka, KS 66603.  Defendant **UNION CARBIDE CORPORATION** is being sued as a supplier of asbestos fibers.

13.     Defendant **WHITTAKER CLARK & DANIELS, INC.** is a New Jersey corporation doing business in the State of Kansas whose registered agent for service of process is:  Joe Cobuzio, Tompkins, McGuire, Wacenfeld & Barry, 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068. Defendant **WHITTAKER CLARK & DANIELS, INC.** is being sued as a supplier of asbestos-containing talc.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §1332 because: (a) the matter in controversy exceeds $75,000.00, exclusive of interest and costs,

and (b) because the parties to the suit are completely diverse in that Defendants are not citizens of the same state as Plaintiff.

15.     Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this case occurred within Kansas.

16.     Defendants listed on the caption are foreign corporations which are amenable to jurisdiction in the courts of the District of Kansas by virtue of their respective conduct of substantial and/or systematic business in the District of Kansas which subjects Defendants to the jurisdiction of the District of Kansas Court pursuant to the State of Kansas Long-Arm Statute. Defendant corporations do or in the past mined, manufactured, processed, imported, converted, compounded, supplied, and/or retailed substantial amounts of Defendants' Products which are or in the past were sold, distributed, and used in the District of Kansas.  As mentioned above, Plaintiff DENNIS DICKENSON was exposed to asbestos while using, working with, or in close proximity to Defendants' Products purchased in the State of Kansas.

## NATURE OF ACTION

17.     As a result of Defendants' wrongful conduct, Plaintiff DENNIS DICKENSON has suffered from mesothelioma, a type of cancer caused by exposure to asbestos.  As a result of his diagnosis, he has suffered and continues to suffer substantial physical pain, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions.  He has also incurred and continues to incur substantial medical expenses and other damages associated with the diagnosis, treatment, and medical course of his cancer.  Further, as a result of Defendants' wrongful conduct, Plaintiff DENNIS DICKENSON has incurred a loss of income.

## FACTUAL BACKGROUND

18.     Plaintiff DENNIS DICKENSON alleges he was wrongfully exposed to and inhaled

or otherwise absorbed asbestos fibers from Defendants' Products, an inherently dangerous toxic substance, during his regular and frequent personal use of Johnson's Baby Powder from approximately 1973 to 1994, and during his regular and frequent personal use of Right Guard Aerosol Deodorant from approximately 1989 to 2020. Plaintiff was also exposed to asbestos-containing talc supplied by Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties LLC f/k/a Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.) and Whittaker Clark & Daniels, Inc.  During these time periods, Plaintiff resided in Darley Abbey, United Kingdom, from approximately 1973 to 1979, and Fort Scott, Kansas, from approximately 1979 to 2022.  Plaintiff's regular and frequent personal use of Johnson's Baby Powder and Right Guard Aerosol Spray Deodorant generated asbestos-containing dust and exposed Plaintiff to respirable asbestos fibers.

19.     Plaintiff DENNIS DICKENSON also alleges he was wrongfully exposed to and inhaled or otherwise absorbed asbestos fibers from Defendants' Products, an inherently dangerous toxic substance, during his employment as a collator helper from approximately 1979 to 1982, collator operator from approximately 1982 to 1995, and as a proofer from approximately 1995 to 2013 at Ward Kraft, Inc. in Fort Scott, Kansas.  Plaintiff's job duties as a collator helper included, but were not limited to, working with collator operators in the process, receiving, and stacking of finished paper products including talc-containing Appleton non-carbon paper, and cleaning talc from the collator machines.  As a collator, Plaintiff's job duties included, but were not limited to, operating the collating machines, working with talc-containing Appleton non-carbon paper, and cleaning talc from the collator machines.  As a proofer, Plaintiff's job duties included, but were

not limited to, handling specialty orders from customers and visiting the production floor on a regular basis.  During his occupations at Ward Karft, Inc., Plaintiff worked in closed proximity to other tradespeople who used Johnson's Baby Powder on the collators to keep papers from sticking to binding glue.  During these time periods, Plaintiff was exposed to asbestos-containing talc supplied by Pfizer Inc., and asbestos fibers supplied by Union Carbide Corporation.

20.     Plaintiff DENNIS DICKENSON was exposed to Defendants' Products which were manufactured, sold, distributed, or installed by the Defendants.

21.     At all times herein set forth, Defendants' Products were being employed in the manner and for the purposes for which they were intended.

22.     Plaintiff DENNIS DICKENSON's exposure to and inhalation or absorption of asbestos fibers emanating from the use of Defendants' Products was completely foreseeable and could or should have been anticipated by the Defendants.

23.     Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise absorbing them.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

24.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

25.     At all times herein relevant, Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff DENNIS DICKENSON and others personally using, working with and in close proximity to Defendants' Products.

26.     At all times herein relevant, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of Defendants' Products.

27.     Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, Defendants' Products to be placed in the stream of interstate commerce with the result that said Products came into use by and/or were in close proximity to Plaintiff DENNIS DICKENSON.

28.     Plaintiff DENNIS DICKENSON personally used, worked with, was in close proximity to, and was exposed to Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by Defendants, with most of the exposure being within the State of Kansas, and some exposure being within Darley Abbey, United Kingdom.

29.     Plaintiff DENNIS DICKENSON was exposed to Defendants' Products which directly and proximately caused Plaintiff to develop an illness known and designated as mesothelioma.

30.     Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling or otherwise absorbing them.

31.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, develop, manufacture, distribute, supply, and sell Defendants' Products that were not unreasonably dangerous or defective, and/or a had a duty to warn Plaintiff DENNIS DICKENSON and other foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the

Defendants created, knew, or, within the exercise of reasonable care should have known, to render them safe for their intended and foreseeable uses.

32.     Plaintiff DENNIS DICKENSON has sustained injuries, illnesses, disabilities, and damages caused by no fault of his own and which could not be avoided through the use of reasonable care.   Plaintiff's development of asbestos-related mesothelioma was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff DENNIS DICKENSON's body, lungs, respiratory system, skin, health, and general well-being.   Further, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff DENNIS DICKENSON would not know of such dangers to his health.

33.     Defendants were negligent in that they failed to exercise ordinary care and caution for the safety of Plaintiff DENNIS DICKENSON in one or more of the following respects:

      a.     including asbestos in Defendants' Products, and using asbestos even though it was foreseeable that persons such as Plaintiff, who was personally using, working with, and in close proximity to Defendants' Products would inhale or otherwise absorb asbestos;

      b.     including asbestos in Defendants' Products, and using asbestos when the Defendants knew or should have known that asbestos would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling and otherwise absorbing it;

c.     including asbestos in Defendants' Products, and using asbestos when adequate substitutes for the asbestos in them were available;

d.     failing to provide any or adequate warnings to persons personally using, working with, and in close proximity to Defendants' Products, to warn them of the dangers of inhaling or otherwise absorbing the asbestos fibers contained in said Products;

e.     failing to provide any or adequate instructions concerning the safe methods of personally using, working with, and being in close proximity to Defendants' Products, including specific instructions on how to avoid inhaling or otherwise absorbing the asbestos fibers in said Products;

f.     failing to conduct tests on Defendants' Products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Plaintiff might be exposed while personally using, working with, and/or in close proximity to said Products; and

g.     designing, manufacturing and selling Defendants' Products that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

34.     Defendants' actions, as stated herein, also constituted a conscious and flagrant disregard of the rights and safety of Plaintiff DENNIS DICKENSON, and by engaging in such actions, Defendants acted with the necessary malice, fraud, and oppression that justifies holding them liable for damages.

35.     Specifically, Defendants are guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice, and gross negligence:

a.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by including asbestos in Defendants' Products, or using asbestos, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff DENNIS DICKENSON, who was personally using, working with, and in close proximity to Defendants' Products would inhale or otherwise absorb asbestos;

b.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by including asbestos in Defendants' Products, or using asbestos, when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling or otherwise absorbing asbestos;

c.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by including asbestos in Defendants' Products, or using asbestos, when adequate substitutes for the asbestos in them were available;

d.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by removing any warnings regarding the dangers of asbestos from the packing of Defendants' Products or on Defendants' Products themselves supplied to persons personally using, working with, and in close proximity to Defendants' Products in their intended and/or reasonably foreseeable manner;

e.   intentionally or with gross negligence disregarded the safety of Plaintiff

DENNIS DICKENSON by failing to provide any or adequate warnings to persons personally using, working with, and in close proximity to Defendants' Products, to warn of the dangers of inhaling or otherwise absorbing asbestos fibers in said Products;

f.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by failing to provide any or adequate instructions concerning the safe methods of personally using, working with, and being in close proximity to Defendants' Products, including specific instructions on how to avoid inhaling or otherwise absorbing the asbestos fibers in said Products;

g.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by failing to conduct tests on Defendants' Products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Plaintiff DENNIS DICKENSON might be exposed while personally using, working with and being in close proximity to said Products;

h.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by failing to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust fibers, therefore adding to the exposure of Plaintiff DENNIS DICKENSON;

i.   intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by failing to take adequate steps to remedy the

above failures including, but not limited to: (1) failure to recall or require removal of Defendants' Products, coupled with; (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render it safe; and, (3) failure to promptly and safely remove asbestos in place; and

j.      intentionally or with gross negligence disregarded the safety of Plaintiff DENNIS DICKENSON by failing to require and/or advise persons such as Plaintiff of hygiene practices designed to reduce and/or prevent the escape of asbestos dust fibers and to avoid inhaling or otherwise absorbing the asbestos dust fibers in said Products.

36.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with said Products.  Defendants' Products were defective at the time they left the control of the Defendants.

37.     Defendants were negligent and breached their duty of due care to Plaintiff DENNIS DICKENSON by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and/or distribution of Defendants' Products at issue in the stream of commerce.

38.     The hazards posed by exposure to Defendants' Products and the resulting injuries and damages to Plaintiff DENNIS DICKENSON were reasonably foreseeable or should have been reasonably foreseen by Defendants.

39.     Subsequent to the initial sale of Defendants' Products to Plaintiff DENNIS DICKENSON and/or his employers, Defendants continued to accumulate additional knowledge regarding the hazards of Defendants' Products.

40.     Defendants had a continuing duty to provide post-sale warnings of the dangers associated with Defendants' Products to users, workers, and bystanders.

41.     At the time Defendants' Products left Defendants' control without adequate warnings or instructions, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to reasonably foreseeable claimants such as Plaintiff DENNIS DICKENSON.   In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their Products posed a substantial risk of harm to reasonably foreseeable users, workers and bystanders such as Plaintiff, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

42.     As a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Plaintiff DENNIS DICKENSON was exposed to and inhaled or otherwise absorbed asbestos fibers causing Plaintiff to develop mesothelioma.  Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical and othis health care services necessary for the treatment of his asbestos-induced mesothelioma and condition.  Plaintiff has also experienced great physical pain and mental anguish as a result of his asbestos-induced mesothelioma, as well as a substantial loss of income.

43.     As a result of the above, Plaintiff seeks damages as hereinafter demanded.

### SECOND CAUSE OF ACTION
### STRICT LIABILITY AGAINST ALL DEFENDANTS

44.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

45.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

46.     Defendants, acting through their agents, servants, and/or employees, placed Defendants' Products in the stream of commerce which were designed, manufactured, distributed, marketed, and/or sold by Defendants and that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable use with the result that said Products came into use by Plaintiff DENNIS DICKENSON.

47.     Defendants placed Defendants' Products on the market and knew or should have known they would be used without inspection for defects.

48.     Defendants failed to design, manufacture, market, distribute, supply, and sell Defendants' Products in such a manner as to render them safe for their intended and foreseeable uses.  By way of example, and not limitation, Defendants:

a.      failed to design, develop, manufacture and test Defendants' Products in such a manner as to render them safe for their intended and foreseeable use, when Defendants knew or should have known that the foreseeable use of and intended purpose of Defendants' Products was by persons, specifically Plaintiff DENNIS DICKENSON, who worked with, personally used and was in close proximity to said Products;

b.      marketed and sold Defendants' Products that were in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff DENNIS DICKENSON's health and well being;

     c.     failed to recall or attempt to repair the defective Defendants' Products when Defendants are and have been aware of the propensity of said Products to injure Plaintiff DENNIS DICKENSON; and

     d.     failed to properly test Defendants' Products to ensure that they were reasonably safe for use throughout their lifetime.

49.     Moreover, when Defendants' Products left Defendants' possession and were placed on the market they were defective in that:

     a.     when used in the intended or reasonably foreseeable manner, Defendants' Products were not reasonably safe for their intended use;

     b.     when used in the intended or reasonably foreseeable manner, Defendants' Products failed to perform as safely as would be expected by an ordinary user or consumer;

     c.     when used in the intended or reasonably foreseeable manner, Defendants' Products caused a risk of harm beyond that which would be contemplated by an ordinary user or consumer;

     e.     Defendants' Products were defectively designed because they were more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweighed their benefits; and

     f.     Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

50.     Defendants violated the requirements of Section 402A of the Restatement of Torts 2d, all of which proximately resulted in Plaintiff DENNIS DICKENSON's asbestos-related mesothelioma.

51.     Additionally, although Defendants knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious and highly harmful to Plaintiff DENNIS DICKENSON's health, Defendants nonetheless:

a.     failed to advise or warn Plaintiff DENNIS DICKENSON of the dangerous characteristics of Defendants' Products;

b.     failed to provide Plaintiff DENNIS DICKENSON with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any, to protect Plaintiff DENNIS DICKENSON from being harmed by exposure to Defendants' Products;

c.     failed to place any or contain adequate warnings on containers of Defendants' Products, or on Defendants' Products themselves, alerting Plaintiff DENNIS DICKENSON of the dangers to his health caused by contact with Defendants' Products; and

d.     failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and/or a safe method of handling Defendants' Products in a safe manner.

52.     Defendants' Products were also defective due to inadequate warnings or instructions during and after the time of marketing in that Defendants knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products and failed to provide any, reasonable and/or adequate warnings or instructions in light of the likelihood that said Products would cause serious physical harm to Plaintiff DENNIS DICKENSON.

53.     As a direct and proximate result of the use of Defendants' Products for the general purposes for which they were designed and intended, Plaintiff DENNIS DICKENSON was

exposed to asbestos and has been injured as described herein.

54.     Accordingly, Defendants are strictly liable to Plaintiff DENNIS DICKENSON for their failure to warn and for the defective design and manufacture and/or marketing, distributing, supplying and selling defective Defendants' Products.

55.  As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**
**INADEQUATE DESIGN, FORMULATION AND MANUFACTURE**
**AGAINST ALL DEFENDANTS**

56.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

57.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specifications of Defendants' Products.

58.     Defendants, acting through their agents, servants, and/or employees placed in the stream of commerce Defendants' Products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by or in close proximity to Plaintiff DENNIS DICKENSON, and fibers from Defendants' Products were frequently inhaled by Plaintiff.

59.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a had a duty to warn Plaintiff DENNIS DICKENSON and foreseeable users, workers and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care, should have known.

60.     Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff DENNIS DICKENSON's body, lungs, respiratory system, skin and health.  Defendants acted unreasonably in the following acts and/or omissions:

(a)     failing to adopt a practical, feasible, and otherwise reasonably alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff DENNIS DICKENSON without substantially impairing the usefulness, practicality, or desirability of Defendants' Products;

(b)     using a design that was so unreasonable that any reasonable person, aware of the relevant facts, would not use or be in close proximity to Defendants' Products of this design; and

(c)     allowing the use of talc that contains asbestos to be used in the manufacture of Defendants' Products when said Products were supposed to be asbestos free.

61.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. Defendants' Products in question were defective at the time they left the control of the Defendants.

62.     Defendants' unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff DENNIS DICKENSON's development of mesothelioma, and as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

63.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY AGAINST ALL DEFENDANTS**

64.     Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

65.     Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their intended purpose.

66.     The implied warranty made by Defendants that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff DENNIS DICKENSON was working with, personally using and in close proximity to Defendants' Products.

67.     Defendants caused Plaintiff DENNIS DICKENSON's injuries, illnesses, disabilities, and damages as stated above by manufacturing, selling, installing, and distributing Defendants' Products which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff DENNIS DICKENSON had a right to rely and did rely.

68.     As a direct and proximate result of the breaches of these warranties, Plaintiff DENNIS DICKENSON was exposed to and inhaled or otherwise absorbed asbestos fibers causing Plaintiff to develop the aforesaid mesothelioma, which has disabled and disfigured Plaintiff; Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced mesothelioma; and, Plaintiff has experienced great physical pain and mental anguish as a result of his asbestos-induced mesothelioma and conditions.  Plaintiff has incurred substantial loss of

income.

69.   As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FIFTH CAUSE OF ACTION
## WILLFUL AND WANTON CONDUCT AGAINST ALL DEFENDANTS

70.   Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

71.   Plaintiff DENNIS DICKENSON and others in his position working with, personally using and/or in close proximity to Defendants' Products, and the exposure and hazard to each of them, in Plaintiff DENNIS DICKENSON's presence as well as others, was known or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

72.   The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicated that Defendants' Products were hazardous to the health and safety of Plaintiff DENNIS DICKENSON and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, therefore depriving them of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products.  As a result, Plaintiff DENNIS DICKENSON was severely damaged as is set forth below.

73.   The Defendants intentionally continued to conceal the dangers of asbestos exposure since 1929, thus denying Plaintiff DENNIS DICKENSON the knowledge with which to take necessary safety precautions, such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure.  Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

(a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products, such rejection being motivated by the possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

74.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff DENNIS DICKENSON and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of, the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff DENNIS DICKENSON and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit dangerous Defendants' Products with full knowledge that Defendants' Products were being used and would be used in the future to the detriment of the health of Plaintiff DENNIS DICKENSON and others similarly situated, and Plaintiff is thereby entitled to damages.

75.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety

of workers, users and bystanders such as Plaintiff DENNIS DICKENSON, Plaintiff therefore seeks exemplary damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of Defendants' Products.

## SIXTH CAUSE OF ACTION
## FAILURE TO WARN AGAINST ALL DEFENDANTS

76.    Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

77.    At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' Products and of exposure to inhalable asbestos.

78.    Defendants had a pre- and post-sale duty to warn Plaintiff DENNIS DICKENSON individually, and individuals such as Plaintiff of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

79.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warn Plaintiff DENNIS DICKENSON of the dangers including, but not limited to:

> (a)    failing to provide adequate cautions, warnings, hazard statements and/or explanations with Defendants' Products which should have been designed to provide Plaintiff DENNIS DICKENSON knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(b)     failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide Plaintiff DENNIS DICKENSON knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(c)     failing to conduct on-site personnel training sessions with exposed individuals which should have been designed to provide to those individuals knowledge about the hazards to them caused by exposure to and dust from Defendants' Products, and how to eliminate the hazards;

(d)     failing to adequately test and research Defendants' Products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff DENNIS DICKENSON;

(e)     failing to inspect Defendants' Products to determine if the Defendants' Products being used were deleterious to the health of exposed individuals;

(f)     failing to design and process Defendants' Products in a manner intended to minimize exposure during normal use;

(g)     failing to specify and market Defendants' Products on the express agreement that necessary controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

(h)    failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

(i)    failing to take adequate precautions and industrial hygiene measures to protect exposed individuals such as Plaintiff DENNIS DICKENSON when working with, personally using and being in close proximity to Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from the use of Defendants' Products;

(j)    failing to provide warnings to Plaintiff DENNIS DICKENSON and other users that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic; and

(k)    otherwise failing to act reasonably under the totality of the circumstances.

80.    Defendants manufactured, processed and/or sold Defendants' Products used by Plaintiff DENNIS DICKENSON during his occupations and personal use. Thus, Defendants had a pre- and post-sale duty to warn individuals working with, personally using and in close proximity to Defendants' Products including, but not limited to, Plaintiff DENNIS DICKENSON, of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' Products.

81.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to workers, users and bystanders.

82.     At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff DENNIS DICKENSON.   In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable worker, user and bystander such as Plaintiff DENNIS DICKENSON, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

83.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff DENNIS DICKENSON to develop mesothelioma and as a consequence of which he was injured, disabled and damaged, and therefore Plaintiff hereby makes a claim for damages from the Defendants jointly and severally.

84.     As a result of the Defendants' failure to warn, Plaintiff DENNIS DICKENSON suffered the injuries, illnesses, disabilities and/or damages hereinafter alleged.

**SEVENTH CAUSE OF ACTION**
**FRAUD AGAINST DEFENDANTS BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), BRENNTAG SPECIALTIES LLC f/k/a BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), THE GILLETTE COMPANY LLC, a subsidiary of THE PROCTER & GAMBLE COMPANY, for its Right Guard line of products, HENKEL CONSUMER GOODS INC. and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, HENKEL CORPORATION and its former subsidiary THE DIAL CORPORATION, for its Right Guard line of products, THE PROCTER & GAMBLE COMPANY (sued individually and as successor-in-interest to THE GILLETTE COMPANY) for its Right Guard line of products, and WHITTAKER CLARK & DANIELS, INC.**

85.     Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary, pleads this cause of action in the alternative.

86.     **Fraudulent Misrepresentation**; All Defendants are liable for their fraudulent misrepresentations:

(a)     First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, made material representations as true when they were not. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document retention policies.  While Plaintiff does not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiff will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

(b)     Second, Defendants represented that the products they manufactured, supplied, or specified for use were not hazardous to humans. These material representations were made before and during the years that Plaintiff purchased and was exposed to asbestos from Defendants' asbestos-containing products. Such material representations were made either directly to Plaintiff, or to a third party intending and reasonably expecting

that the substance of those material representations would be repeated to Plaintiff.

(c)     Third, Defendants knew that the material representations were untrue when they made them, or they made the material representations recklessly and without regard for their falsity or were made with an intent to deceive Plaintiff.

(d)     Fourth, Defendants intended that Plaintiff, and/or the same class of persons as Plaintiff, rely on the material representations or their substance.

(e)     Fifth, Plaintiff justifiably relied on Defendants' material representations or the substance of these material representations and acted to his detriment.

(f)     Sixth, Plaintiff DENNIS DICKENSON developed mesothelioma.

(g)     Seventh, Plaintiff's reliance on those material representations was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

87.     **Fraudulent Concealment (Nondisclosure)**: All Defendants are liable for their fraudulent concealment (nondisclosure).

(a)     First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendants and Plaintiff. Specifically, Defendants stated that their products could be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

(b)     Second, Defendants (i) had exclusive knowledge of material facts not known to Plaintiff (as set forth above), (ii) actively concealed those material facts from Plaintiff, (iii) made partial representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose facts which materially qualified those representations. Such nondisclosures included Defendants representing their products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

(c)     Third, each Defendants entered into a relationship and/or a transaction with Plaintiff sufficient to give rise to a duty to disclose.  For example, Plaintiff used or otherwise encountered Defendants' products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon which Defendants derived a direct monetary benefit directly from Plaintiff 's purchase and use of the products. As for another example, Defendants directly advertised their products to those in Kansas and elsewhere as a symbol of freshness, cleanliness, and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled men

and women through advertisements to dust themselves with the products to mask odors.  Defendants derived direct monetary benefit from consumers' use of the products because Plaintiff decided to use or purchase Defendants' products.

(d)     Fourth, Plaintiff did not know of the concealed facts.

(e)     Fifth, Defendants intended to deceive Plaintiff by concealing the facts, and/or by making certain material representations without disclosing additional facts that would have materially qualified those representations.

(f)     Sixth, had the omitted information been disclosed, Plaintiff reasonably and justifiably would have behaved differently.

(g)     Seventh, Plaintiff DENNIS DICKENSON developed mesothelioma.

(h)     Eighth, each Defendants' concealment was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

88.     **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiff hereby incorporates by reference the allegations of Paragraph 86 as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent misrepresentation.

(a)     First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent misrepresentation against Plaintiff, and/or the same class of persons as Plaintiff.

(b)     Second, Defendants agreed with their conspirators and intended that the fraudulent misrepresentation be committed.

(c)     Third, Plaintiff DENNIS DICKENSON developed mesothelioma.

(d)     Fourth, each Defendants' participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

89.     **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: Plaintiff hereby incorporates by reference the allegations of Paragraph 87 as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent concealment.

(a)     First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Plaintiff, and/or the same class of persons as Plaintiff.

(b)     Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

(c)     Third, Plaintiff DENNIS DICKENSON developed mesothelioma.

(d)     Fourth, each Defendants' participation in the conspiracy was a substantial factor in causing Plaintiff's mesothelioma and the resulting damages thereto.

90.     **Knowledge of Hazards**: At all times pertinent hereto, all Defendants owed Plaintiff a duty, as provided for in Restatement (Second) of Torts 2D §552, to abstain from injuring his person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Plaintiff.  Such acts and omissions consisted of acts falling within Restatement (Second) of Torts 2D §552, and more specifically were (i) suggestions of fact which were not true and which the Defendants did not believe to be true, (ii) assertions of fact of that which were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the

suppression of facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a cause of action for violation of Plaintiff's rights as provided for in Restatement (Second) of Torts 2D §552.

91.    Since 1924, all of the Defendants have known and possessed of true facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the asbestos-containing products referred to herein were and are hazardous to the health and safety of Plaintiff, and others similarly situated. Defendants engaged in the following acts and omissions:

(a)    did not label any of the aforementioned asbestos-containing products as to their hazards to the health and safety of Plaintiff, and others in his position using these products, when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling the asbestos-containing products as to their said hazards. Defendants, and each of them, caused to be suggested as fact to Plaintiff that it was safe for him to use Defendants' asbestos-containing products, when in fact this was not true and Defendants did not believe it to be true.

(b)    suppressed information relating to the danger of using the Defendant's asbestos-containing products by requesting the suppression of information to Plaintiff, Plaintiff's class of persons, and the general public concerning the dangerous nature of the asbestos-containing products to all persons, including users, bystanders and household members, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information.

(c)     sold the aforementioned products and materials to the public, including Plaintiff, and others in Kansas and elsewhere without advising them of the dangers of using Defendants' asbestos-containing products, and the dangers to those persons' household members, when Defendants knew of such dangers as set forth herein, and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Plaintiff and the public information was not true and which Defendants had no reasonable ground for believing to be true, in a manner not warranted by the information possessed by said Defendants, and each of them, to wit, that it was safe for Plaintiff to use Defendants' asbestos-containing products and that they did not pose a risk of harm.

(d)     suppressed and continue to suppress from everyone, including Plaintiff, medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council the results of a study conducted among tremolite, talc and slate workers.  The study indicated that the talc was a hydrous calcium magnesium silicate, being 45 percent talc and 45 percent tremolite, and the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." lathe September 1935 issue of National

Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

(e)     belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of the dangers to users of Defendants' asbestos-containing products for and on behalf of Defendants, and each of them, thereby misleading Plaintiff to his prejudice through the suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers

which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiff at this time.

(f)   knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina.  This information was disseminated through the ATI and other industry organizations to all other Defendants, and each of them, herein.  Between 1942 and 1950, Defendants, and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein.  Thereby, Defendants suggested as fact that which is not true and disseminated other facts likely to and which did mislead Plaintiff for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge, by not giving Plaintiff the true facts concerning such knowledge of these dangers, when Defendants were bound to disclose it.

(g)   failed to warn Plaintiff and others similarly situated regarding the nature of Defendants' talc-containing products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. . fiber content. . . averaging 19%.  The

fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits.  Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Plaintiff and others similarly situated that their talc containing products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such material was dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose this information.

(h)     concealed from Plaintiff and others similarly situated the true nature of their exposure, the fact that Defendants knew that exposure to respirable asbestos meant that Plaintiff would inhale this asbestos, significantly increasing his risk of developing asbestosis, lung cancer, and mesothelioma; that Plaintiff that had in fact been exposed to respirable asbestos; that the materials to which Plaintiff was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn him of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

(i)     failed to provide information to the public at large and buyers, users and physicians of Plaintiff for the purpose of conducting physical examinations

of anyone whom came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Plaintiff had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons including Plaintiff as to the dangers and risk of harm to which they were exposed.

(j)      affirmatively misrepresented that Defendants' asbestos-containing products were safe to use and handle, when Defendants knew such statements were untrue when made, or made such untrue statements recklessly and without regard for their falsity.

92.      Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants, and each of them, having such knowledge, knowing Plaintiff did not have such knowledge and would breathe such material innocently, was done falsely and fraudulently and with full intent to induce Plaintiff to be in a dangerous environment and to cause him to remain unaware of the true facts, all in violation of Restatement (Second) of Torts 2D §552.

## <u>LOSS OF CONSORTIUM</u>

93.      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

94.     Plaintiff DAVID DICKENSON and Rowena Dickenson were married on July 30, 1977 and have remained married at all times material hereto.

95.     As a direct and proximate result of the injuries, illnesses, disabilities and/or damages complained of herein with respect to Plaintiff DAVID DICKENSON, and as a direct and proximate result of the acts and omissions of the Defendants, Rowena Dickenson has also suffered and will continue to suffer loss of consortium, society, companionship, fellowship and other valuable services of her husband; and therefore, Rowena Dickenson is entitled to damages for her loss of consortium, both past and future.

## COMPENSATORY DAMAGES
## AGAINST ALL DEFENDANTS

96.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

97.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease of Plaintiff DENNIS DICKENSON, and of the following general and special damages including:

a)     Damages to punish Defendants for proximately causing Plaintiff DENNIS DICKENSON's untimely injuries, illnesses, and disabilities;

b)     Physical pain and mental anguish sustained by Plaintiff DENNIS DICKENSON in the past;

c)     Physical pain and mental anguish that Plaintiff DENNIS DICKENSON, in reasonable probability, will sustain in the future;

d)     The past disfigurement suffered by Plaintiff DENNIS DICKENSON;

e)     The future disfigurement that Plaintiff DENNIS DICKENSON, in reasonable probability, will sustain in the future;

f)      The physical impairment sustained by Plaintiff DENNIS DICKENSON in the past.

g)      The physical impairment that Plaintiff DENNIS DICKENSON, in reasonable probability, will sustain in the future;

h)      Medical expenses incurred by Plaintiff DENNIS DICKENSON in the past;

i)      Medical expenses that Plaintiff DENNIS DICKENSON, in reasonable probability, will sustain in the future;

j)      Plaintiff DENNIS DICKENSON's lost earning capacity sustained in the past;

k)      Plaintiff DENNIS DICKENSON seeks exemplary damages.

l)      loss of consortium, society, aid, companionship and services to the heirs of Plaintiff DENNIS DICKENSON;

m)      future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff DENNIS DICKENSON; and

n)      any and all other recoverable personal injury, survival, and/or wrongful death damages for Plaintiff and Plaintiffs' heirs.

WHEREFORE, Plaintiff prays for judgment against the Defendants for actual damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

## **PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 17th day of February, 2022

Respectfully submitted,

**CROSS LAW FIRM, LLC**

/s/ Gerald Lee Cross, Jr.
Gerald Lee Cross, Jr., Esq.
KS Bar No. 23573
8001 Conser, Suite 280
Overland Park, KS 66204
Telephone: 816-454-5297
Facsimile:  913-904-1650
Lcross@gmolaw.com

And

**SIMON GREENSTONE PANATIER, PC**

FRANK J. WATHEN (*pro hac vice pending*)
Texas State Bar No. 20920010
1201 Elm Street, Suite 3400
Dallas, Texas 75270
Telephone: 214-276-7680
Facsimile: 214-276-7699
fwathen@sgptrial.com

And

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

JACKIE O. ROCHELLE, ESQ. (*pro hac vice pending*)
Missouri Bar No. 58557
1015 Locust Street, Suite 1200
St. Louis, MO 63101
Telephone: (314) 241-2003
Facsimile: (314) 241-4838
jrochelle@mrhfmlaw.com

**ATTORNEYS FOR PLAINTIFF**